U.S. DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
RECEIVED

JUN 1 8 2015

TONY R. MOORE, CLERK
BY _____ DEPUTY

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

ALEXANDRIA DIVISION

b

JAMES LYNDAL FOSTER,
        Petitioner

VERSUS

WARDEN, AVOYELLES CORRECTIONAL
CENTER,
        Respondent

CIVIL ACTION
SECTION "P"
NO. 1:14-CV-00434

JUDGE DEE D. DRELL
MAGISTRATE JUDGE JAMES D. KIRK

REPORT AND RECOMMENDATION OF MAGISTRATE JUDGE

Before the court is a petition for writ of habeas corpus filed pursuant to 28 U.S.C. § 2254 by petitioner James Lyndal Foster ("Foster") on February 21, 2014 (Doc. 1).  Foster is attacking his 2009 conviction and sentence, pursuant to a guilty plea in the Louisiana Ninth Judicial District Court, Rapides Parish, on one count of possession of methamphetamine (Doc. 19, Ex. 4, pp. 2-3/81).  State v. Foster, 10-615 (3/16/11), 59 So.3d 495, writ den., 2011-KO-0765 (La. 10/14/11), 74 So.3d 217.   Foster was sentenced to twenty years imprisonment as a habitual offender.  State v. Foster, 10-871 (3/16/11), 59 So.3d 500, writ den., 2011-KO-0765 (La. 1-17-11), 130 So.3d 341.  Foster is presently confined in the Avoyelles Correctional Center in Cottonport, Louisiana.

Foster raises the following grounds for relief in his habeas petition:

    1. The trial judge erred in refusing to grant defense counsel's request for a continuance or a mistrial.

    2. The trial judge erred in dismissing defense counsel's

motion to suppress evidence and in refusing to hear argument on that motion.

3. The trial judge erred in not conducting an evidentiary hearing on these matters.

The Respondent filed an answer (Docs. 18, 19). Foster's habeas petition is now before the court for disposition.[1]

## Facts

The facts of this case as set forth by the Louisiana Third Circuit Court of Appeal, at Foster, 59 So.3d at 496-497, are as follows:

> "Lieutenant Scott Weisler of the Pineville Police Department stopped a vehicle operated by Defendant because he was not wearing a seat belt. Defendant exited the vehicle, and Lieutenant Weisler asked for insurance and registration documents. Defendant went to the passenger side of the vehicle, accompanied by Lieutenant Weisler, and sat in the seat to retrieve the documentation from the glove compartment. Defendant picked up a black eyeglass case, pushed it behind him, and sat back as he looked through the glove box. Although other items were on the seat, the eyeglass case was the only one Defendant moved.

> "While looking in the vehicle's center console, Defendant again moved the eyeglass case 'to where, again, it looked like he was trying to conceal something.' His hands were 'shaking really bad,' he was sweating profusely, and he was talking continuously. Defendant chewed on his lip and clenched his jaw, actions Lieutenant Weisler knew from experience to be associated with methamphetamine use.

> "Based on Defendant's behavior, Lieutenant Weisler called another unit for backup. He performed a pat down on Defendant, and when Officer Edric Smith arrived, Lieutenant Weisler asked him to stay with Defendant while he 'went and conducted a frisk of the vehicle.'

---

[1] The District Judge remanded Foster's petition to the undersigned for consideration of the merits (Doc. 24).

Defendant's level of agitation increased as Lieutenant Weisler did the pat down and search of the vehicle.

"Lieutenant Weisler found a clear plastic bag that was determined to contain methamphetamine inside the black eyeglass case. He also 'found a glass meth smoking pipe' in the center console.

"The in-car cameras in Lieutenant Weisler's vehicle captured the events to which he testified. They recorded Defendant saying he wished he would have tried to destroy, eat, or dispose of the methamphetamine. The cameras did not show the placement of Defendant and Officer Smith during the pat down or whether the vehicle's doors were closed. Had the search of the vehicle revealed nothing, Lieutenant Weisler would have written a citation for a traffic violation and Defendant would have reentered his vehicle and been on his way."

## Rule 8(a) Resolution

This court is able to resolve the merits of this habeas corpus petition without the necessity of an evidentiary hearing because there is no genuine issue of material fact that is relevant to the petitioner's claims, and the State court records provide the required and adequate factual basis necessary to the resolution of the habeas corpus petition. Moya v. Estelle, 696 F.2d 329, 332-33 (5th Cir. 1983); Easter v. Estelle, 609 F.2d 756, 761 (5th Cir. 1980); Habeas Corpus Rule 8(a).

## Standard of Review

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall be considered only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States. 28 U.S.C. § 2254(a).

Under 28 U.S.C. § 2254 and AEDPA, which is applicable to habeas petitions filed after its effective date on April 24, 1996, habeas relief is not available to a state prisoner with respect to a claim that was adjudicated on the merits in the State court proceedings unless the adjudication of the claim (1) resulted in a decision that was *contrary to*, or involved an *unreasonable application of*, clearly established Federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an *unreasonable determination* of the facts in light of the evidence presented in the State Court proceeding. Therefore, pure questions of law and mixed questions of law and fact are reviewed under Section 2254 (d)(1), and questions of fact are reviewed under Section 2254(d)(2). Martin v. Cain, 246 F.3d 471, 475-76 (5th Cir. 2001), cert. den., 534 U.S. 885, 122 S.Ct. 194 (2001), and cases cited therein.

<u>Law and Analysis</u>

In the case at bar, Foster's trial commenced with a jury selection, then argument and decisions on his pretrial motions for a continuance, a mistrial, and to suppress. After the trial judge denied Foster's pretrial motions, Foster decided to waive his right to a jury trial and entered a guilty plea.

Foster contends in his habeas petition that the trial judge's decisions on his pretrial motions to continue, for a mistrial, and to suppress were erroneous.

4

Ground 1 - Video Evidence

First, Foster alleges the trial judge erred in refusing to grant defense counsel's motion for a continuance or a mistrial. Foster contends that, on September 3, 2009, both counsel signed a joint stipulation as to discovery (Doc. 19, p. 11/106), trial began on November 3, 2009, and on November 4, 2009 defense counsel learned of a video recording of Foster's stop, search, seizure of evidence, and arrest. Defense counsel moved for continuance a mistrial on November 5, 2009 (Doc. 19, p. 47/106), which were denied (Doc. 19, p. 49/106). Foster does not contend the prosecutor knowingly withheld the video, but argues that the prosecutor nevertheless had a duty to disclose the video pursuant to Brady v. Maryland.

1.

In Brady v. Maryland, 373 U.S. 83, 87, 83 S.Ct. 1194, 1196-97 (1963), the Supreme Court held that the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or punishment, irrespective of the good faith or bad faith of the prosecution. Wilson v. Whitley, 28 F.3d 433, 434 (5th Cir. 1994), cert. den., 513 U.S. 1091, 115 S.Ct. 754 (1995), citing U.S. v. Bagley, 473 U.S. 667, 682, 105 S.Ct. 3375, 3383 (1985). In order to establish that evidence falls within the purview of Brady, a petitioner must establish that the evidence was (1) suppressed, (2)

5

favorable, and (3) material. <u>Williams v. Whitley</u>, 940 F.2d 132, 133 (5th Cir. 1991). The determinative question is whether the evidence was material; that is, whether there is a reasonable probability that, had the report been disclosed to the defendant the result of the proceeding would have been different. <u>Wilson</u>, 28 F.3d at 434, citing <u>Bagley</u>, 473 U.S. at 682, 105 S.Ct. at 3383. A reasonable probability is a probability sufficient to undermine confidence in the outcome. <u>Spence v. Johnson</u>, 80 F.3d 989, 994 (5th Cir.), cert. den., 519 U.S. 1012, 117 S.Ct. 519 (1996), citing <u>Bagley</u>, 413 U.S. at 682, 105 S.Ct. at 3383. The materiality of <u>Brady</u> material depends almost entirely on the value of the evidence relative to the other evidence mustered by the state. <u>Wilson</u> 28 F.3d at 439. The prosecutor is not required to deliver his entire file, but only to disclose evidence favorable to the accused that, if suppressed, would deprive the defendant of a fair trial. <u>Wilson</u>, 28 F.3d at 435. The prosecution is deemed to have knowledge of information readily available to it and the failure to provide that information when requested is a violation of the <u>Brady</u> rule. <u>Williams</u>, 940 F.2d at 133.

When evaluating a claim of impeachment evidence withheld in violation of <u>Brady</u>, the court must consider the nature of the impeachment evidence improperly withheld and the additional evidence of the defendant's guilt independent of the disputed testimony. <u>U.S. v. Weintraub</u>, 871 F.2d 1257, 1262 (5th Cir. 989).

6

When the reliability of a given witness may well be determinative of guilt or innocence, nondisclosure of evidence affecting credibility falls with the general rule that suppression of material evidence justifies a new trial irrespective of the good faith or bad faith of the prosecution. Giglio v. U.S., 405 U.S. 150, 153-154, 92 S.Ct. 763, 766 (1972), citing Napue v. Illinois, 360 U.S. 264, 269, 79 S.Ct. 1173, 1177 (1959). However, when the undisclosed evidence is merely cumulative of other evidence, no Brady violation occurs. Spence, 80 F.3d at 995.

2.

In the case at bar, the trial transcript shows that trial began on November 5, 2009. The trial transcript also shows that defense counsel stated that, on November 3, she asked the prosecutor if a video existed, since there was nothing in the record to indicate whether or not there was a video (Doc. 19, Ex. 3, p. 20/78). Defense counsel stated that she was told that phone calls would be made to ascertain whether or not a video existed (Doc. 19, Ex. 3, p. 20/78). Defense counsel further stated that she received a phone call from the prosecutor's secretary on November 4, who said there was a video on CD and that a fax would be sent out that day with a 768 notice (Doc. 19, Ex. 3, p. 20/78). Defense counsel stated that she received both the 768 notice and the CD on November 4, but that the 768 notice was back-dated November 2 (Doc. 19, pp. 50-51/106; Doc. 19, Ex. 3, p. 21/78).

7

Defense counsel argued at trial that she was not sure whether the prosecutor knew about the video on November 2 and did not give it to her until she asked for it, or did not know about it until November 4 and back-dated the 768 Notice to November 2 (Doc. 19, Ex. 3, p. 22/78).   Defense counsel further argued that ninety percent of the CD was inaudible due to background noise, so she needed additional time to get audio enhancements of the video, and the CD showed a witness at the scene of the stop and arrest whom she would have liked to question before trial (Doc. 19, Ex. 3, p. 23/78).

The prosecutor stated that the CD was brought to his office on November 4, 2009 by a police officer, after he had inquired about it on November 3, 2009 (Doc. 19, Ex. 3, p. 25/78).[2]   The police officer testified that the police do not download and burn CDs of traffic stops that are going to trial unless the DA asks for the video (Doc. 19, Ex. 3, p. 43/78).   The officer further testified that the report did not specifically mention the video because there is always a video made of a stop; the video starts when the police car lights are activated (Doc. 19, Ex. 3, p. 47/78).   The prosecutor's assistant testified that the letter and 768 Notice were both written on November 4, and that the November 2 date on the letter was an error (Doc. 19, Ex. 3, pp. 50-51/78).   Another attorney in the Rapides Parish Public Defender's Office, Harold

---

[2] Foster's trial began on November 5, 2009.

8

Murray, testified that the prosecutor (who was the Rapides Parish District Attorney) had told him he discouraged the police from automatically sending the videos to his office due to storage issues; as a result, the videos are not provided to defense attorneys with the prosecutor's file pursuant to the open-file discovery stipulation, and usually have to be specifically asked for by defense counsel (Doc. 19, Ex. 3, pp. 53-63/78). Attorney Murray indicated that, pursuant to the language of the written discovery stipulation, a separate request should not be necessary.

3.

As stated above, under the law, the prosecutor was held to know of the existence of a video which was readily available to him.    Therefore, pursuant to the written discovery agreement/stipulation, the prosecutor should have provided the video to defense counsel with the other discovery materials, without defense counsel having to make a second discovery request.

However, Foster has not proven that his late receipt of the video violated Brady.  Foster has not proven the materiality requirement of his Brady claim because he has not contended or shown that the video was exculpatory or that, had the video been disclosed earlier or had a continuance been granted so that the video could be made audible, there is a reasonable probability that the result of the proceeding would have been different.  Although Foster alleges that defense counsel would have used the video to

9

impeach the officers who testified, he does not point to any specific testimony that would have been contradicted by the video. Therefore, Foster has failed to carry his burden of proving the video was favorable and material, and has not shown that a <u>Brady</u> violation occurred.

Foster also argues the trial judge erred in failing to grant a continuance[3] or mistrial pursuant to La.C.Cr.P. art. 729.5, due to the State's failure to comply with discovery. Foster contends that defense counsel did not have enough time to examine the video, have it made audible, and prepare a defense based on the video. Foster does not specify what defense he could have prepared based on the video or that it would have been successful at trial.

Habeas relief cannot be had absent the allegation by a petitioner that he has been deprived of some right secured to him by the United States Constitution or laws.  28 U.S.C. § 2254; <u>Thomas v. Torres</u>, 717 F.2d 248, 249 (5th Cir. 1983), cert. den., 465 U.S. 1010, 104 S.Ct. 1008 (1984).  Violations of state procedural rules, such as concerning a continuance or a mistrial, do not state a claim for violation of a constitutional right cognizable under Section 2254.

Moreover, as discussed above, Foster has not shown how earlier disclosure of the video would have made a difference to his

---

[3] As noted by the state courts, a continuance of trial could not be granted once trial had begun.  <u>Foster</u>, 59 So.3d at 498.

defense.   The Court of Appeal also noted that Foster also did not indicate specifically how the video would have been helpful to his case.   Foster, 59 So.3d at 498-499.   Therefore, Foster has not carried his burden of showing that his trial was rendered fundamentally unfair by the trial judge's failure to grant his motion for a continuance or a mistrial.

This ground for relief is meritless.

Ground 2 - Motion to Suppress

Next, Foster argues the trial judge erred in dismissing defense counsel's motion to suppress evidence and in refusing to hear arguments on that motion.   Foster moved to suppress the evidence seized in the search of his vehicle, contending it was seized without consent or probable cause for the search, and to suppress any statements he made to the officers as a result of the illegal search and seizure (Doc. 19, p. 52/106).   The trial judge summarily dismissed the motion as untimely (Doc. 19, p. 54/106).

Foster's motion to suppress signed by his attorney on November 2, 2009[4] (Doc. 19, p. 52/106).   The jury selection for Foster's trial was held on November 3, 2015 and the trial began on November 5, 2009 (Doc. 19-3, p. 14/78).   In Louisiana, pursuant to La.C.Cr.P. art. 521 and art. 703, criminal pretrial motions shall be made within fifteen days after arraignment unless the court sets

---

[4] The trial record does not indicate the date the motion to suppress was filed, but the state Court of Appeals found it was filed on November 2, 2009.

a different time or good cause is shown why fifteen days is inadequate.  On a written motion at any time and a showing of good cause, the court shall allow additional time to file pretrial motions.

Foster was arraigned on August 28, 2009 (Doc. 19-2, p. 67/71). Foster's motion to suppress was filed on November 2, 2009, more than two weeks after arraignment, the record does not show a different time was set by the court, and Foster's motion to suppress did not show good cause why it should be considered late.

Foster contends that the motion to suppress was filed prior to defense counsel's discovery of the video, but the Court did not rule on the motion until November 5, after the discovery of the video on November 4.  Foster argues the Court should have considered argument since the video bolstered his motion to suppress, but does not explain specifically how the video supported his motion to suppress.

Foster's argument is that the trial judge erred in denying his motion to suppress for untimeliness.  However, it was within the trial judge's discretion to deny the motion as untimely.  Moreover, Foster's claim that the state court judge should not have denied his motion to suppress as untimely is a matter of state procedural law that is not cognizable in a habeas petition.

Finally, Foster has not alleged or shown specifically what evidence he wanted to have suppressed and on what grounds it should

have been suppressed.   Foster's motion to suppress was only a general motion that did not specify any specific evidence or statements to be suppressed, and Foster does not specify in his habeas petition what evidence or statements he believes should have been suppressed and on what grounds.   Therefore, Foster has not shown how he was prejudiced by the trial judge's summary denial of his motion to suppress.

Since Foster has not carried his burden of proving his constitutional rights were violated when the state court judge summarily denied his motion to suppress as untimely, this ground for relief is meritless.

Evidentiary Hearings

Finally, Foster contends the trial judge erred in not conducting evidentiary hearings on the matters set forth above. Since Foster has not alleged any violations of his constitutional rights, he has not stated a cognizable habeas claim due to the state court judge's failure to hold evidentiary hearings on his motion to suppress and motion for a continuance or a mistrial. This ground for relief is also meritless.

Conclusion

Based on the foregoing discussion, IT IS RECOMMENDED that Foster's habeas petition be DENIED AND DISMISSED WITH PREJUDICE.

Under the provisions of 28 U.S.C. Section 636(b)(1)(C) and Rule 2(b), parties aggrieved by this recommendation have fourteen

(14) days from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within fourteen (14) days after being served with a copy of any objections or response to the District Judge at the time of filing. No other briefs (such as supplemental objections, reply briefs etc.) may be filed. Providing a courtesy copy of the objection to the magistrate judge is neither required nor encouraged. Timely objections will be considered by the district judge before he makes a final ruling.

**Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days following the date of its service, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error.** *See Douglass v. United Services Automobile Association*, **79 F.3d 1415 (5th Cir. 1996).**

Pursuant to Rule 11(a) of the Rules Governing Section 2254 cases in the United States District Courts, this court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant. Unless a Circuit Justice or District Judge issues a certificate of appealability, an appeal may not be taken to the court of appeals. **Within fourteen (14) days from**

service of this Report and Recommendation, the parties may file a memorandum setting forth arguments on whether a certificate of appealability should issue. *See* 28 U.S.C. § 2253(c)(2). **A courtesy copy of the memorandum shall be provided to the District Judge at the time of filing.**

THUS DONE AND SIGNED in Alexandria, Louisiana on this 18th day of June 2015.

JAMES D. KIRK
UNITED STATES MAGISTRATE JUDGE